ORDERED.

**Dated:  December 16, 2022**

*Caryl E. Delano*

Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 8:22-bk-00345-CED
                                                                     Chapter 11
BVM The Bridges LLC,

     Debtor.
_____/

Pallardy LLC,                                               Adv. 8:22-ap-00018-CED

     Plaintiff,

v.

BVM The Bridges LLC, *et al.,*

     Defendants.
_____/

**MEMORANDUM OPINION**
**<u>CONFIRMING VALIDITY OF TAX DEED</u>**

This Memorandum Opinion supplements the Court's October 12, 2022 *Order Granting Pallardy LLC'S Summary Judgment Motion; Denying CPIF Lending LLC's Summary Judgment Motion; and Denying Debtor's Summary Judgment Motion.*[1]

Plaintiff, Pallardy LLC ("Pallardy"), was the successful bidder at a prepetition tax deed sale of a parcel of property located in Hillsborough County, Florida ("Parcel 10"). The Debtor is the former owner of Parcel 10; the Debtor operates an assisted living facility constructed on Parcel 10 and two adjacent parcels of property. CPIF Lending LLC ("CPIF") holds a mortgage on Parcel 10 and the two adjacent parcels.

Pallardy filed a state court lawsuit against the Debtor and CPIF to quiet title to Parcel 10,[2] and CPIF counterclaimed for a declaration that Pallardy's tax deed is invalid.[3] After the Debtor filed for Chapter 11 bankruptcy, Pallardy removed its quiet title action to this Court.

In its summary judgment motion, Pallardy asks the Court to confirm the validity of its tax deed and to quiet title to Parcel 10 in Pallardy as a matter of law.[4] CPIF and the Debtor oppose Pallardy's summary judgment motion,[5] and in their

---

[1] Adv. Doc. No. 87.

[2] Adv. Doc. No. 1-1.

[3] *Id.*

[4] *Pl.'s Mot. for Summ. J.*, Adv. Doc. No. 55.

[5] *Resp. to Pl.'s Mot. for Summ. J.*, Adv. Doc. Nos. 72; *Joinder to Def.'s Resp. to Pl.'s Mot. for Summ. J.*, Adv. Doc. No. 73. U.S. Bank, which is also a Defendant in this proceeding, joined CPIF's opposition to Pallardy's summary judgment motion. Adv. Doc. No. 74.

own summary judgment motions, ask the Court to invalidate Pallardy's tax deed as a matter of law.[6]

For the reasons that follow, the Court concludes that Pallardy is entitled to judgment confirming the validity of the tax deed and quieting title to Parcel 10 in Pallardy.

## I.   UNDISPUTED FACTS

The parties agree that the facts are not in dispute.

The Debtor owns and operates an assisted living facility ("The Bridges") that occupies three parcels of land—Parcel 10, Parcel 30, and Parcel 70—in Hillsborough County, Florida.[7] The Bridges consists of a building and attached parking lot that, together, straddle the three parcels.[8] The Debtor is licensed by Florida's Agency for Healthcare Administration ("AHCA") to operate The Bridges as an assisted living facility.[9]

---

[6] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58; *Joinder to Def.'s Mot. for Summ. J.*, Adv. Doc. No. 59. U.S. Bank also joined in CPIF's summary judgment motion. Adv. Doc. No. 63.

[7] *Property Information Report*, Adv. Doc. No. 60-7.

[8] *Aff. of Sheila Perine*, Adv. Doc. No. 58-3, ¶ 7.

[9] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 16, l. 3 – p. 17, l. 3. AHCA has issued a notice of intent to deny renewal of the Debtor's license based, in part, on the tax deed dispute. *August 29, 2021 letter from Thomas M. Hoeler to John E. Thomas*, Adv. Doc. No. 72-1. AHCA has abated any agency action pending resolution of the tax deed issue. *Id.*

The Debtor's acquisition of Parcels 10, 30, and 70 was funded through industrial revenue bonds.[10] CPIF holds 100% of the bonds,[11] and U.S. Bank is the bond trustee.[12] As bond trustee, U.S. Bank is the named mortgagee on the mortgage encumbering Parcels 10, 30, and 70 (the "Mortgage").[13]

U.S. Bank escrowed money to pay the insurance and property taxes for Parcels 10, 30, and 70.[14] In 2017, the Debtor paid the property taxes with funds that were held in escrow by U.S. Bank.[15] But, for reasons that are unclear, neither the Debtor nor U.S. Bank paid the 2018 real estate taxes for Parcels 10, 30, and 70 before they became delinquent on April 1, 2019.

Under Florida law,[16] property taxes become delinquent on April 1 following the year in which they are assessed.[17] Under § 197.402, the tax collector is required to

---

[10] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 18, l. 25 – p. 19, l. 13.

[11] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 53, ll. 18 – 24.

[12] *Master Trust Indenture*, Adv. Doc. Nos. 58-11 – 58-12; *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 53, l. 25 – p. 54, l. 7.

[13] *Mortgage & Security Agreement*, Adv. Doc. No. 60-5.

[14] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 66, l. 8 – p. 69, l. 20.

[15] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 66, l. 8 – p. 69, l. 20.

[16] Unless otherwise stated, statutory references are to the Florida Statutes.

[17] § 197.333, Fla. Stat. ("All taxes shall be due and payable on November 1 of each year or as soon thereafter as the certified tax roll is received by the tax collector. Taxes shall become delinquent on April 1 following the year in which they are assessed or immediately after 60 days have expired from the mailing of the original tax notice, whichever is later.").

collect delinquent taxes by conducting a tax certificate sale by June 1.[18] Tax

certificates are sold at a public auction to the bidder who will pay the delinquent

taxes (and other costs) and demand the lowest interest rate from the property

owner.[19] Under § 197.502(1), if the tax certificate remains unpaid for two years after

the taxes became delinquent, the certificate holder can force a public auction of the

property by applying for a tax deed with the county tax collector.[20]

Relevant here, in May 2019, the Hillsborough County Tax Collector sold a tax

certificate for Parcel 10.[21] Two years later, in April 2021, the tax certificate holder

applied for a tax deed (the "Tax Deed Application").[22]

When the Tax Collector received the Tax Deed Application, it ordered a

property information report as required under § 197.502(5).[23] The purpose of the

---

[18] § 197.402(3), Fla. Stat. ("[O]n or before June 1 or the 60th day after the date of delinquency, whichever is later, the tax collector shall advertise once each week for 3 weeks and shall sell tax certificates on all real property having delinquent taxes.").

[19] § 197.432(6), Fla. Stat. ("Each certificate shall be awarded to the person who will pay the taxes, interest, costs, and charges and will demand the lowest rate of interest, not in excess of the maximum rate of interest allowed by this chapter.").

[20] § 197.502(1), Fla. Stat. ("The holder of a tax certificate at any time after 2 years have elapsed since April 1 of the year of issuance of the tax certificate and before the cancellation of the certificate, may file the certificate and an application for a tax deed with the tax collector of the county where the property described in the certificate is located.").

[21] *Application for Tax Deed*, Adv. Doc. No. 60-6.

[22] *Application for Tax Deed*, Adv. Doc. No. 60-6.

[23] *Dep. of David Harrington*, Adv. Doc. No. 55-4, p. 62, l. 8 – p, 63, l. 15; *Dep. of Dana Dove*, Adv. Doc. No. 55-5, p. 21, ll. 6 – 13; p. 23, ll. 8 – 20.

property information report is to identify the titleholders, lienholders, and mortgage holders entitled to notice of the tax deed sale.[24]

In May 2021, a title company, Forseti Real Estate Services, sent a property information report (the "Property Information Report") to the Tax Collector. The Property Information Report identified the Debtor as the titleholder of record, the Internal Revenue Service as a lienholder of record, and U.S. Bank as the mortgage holder of record.[25]

However, the Property Information Report misidentified the book and page number of U.S. Bank's mortgage in the official records of Hillsborough County.[26] As a result, the Property Information Report incorrectly stated there was "[n]o address provided" for U.S. Bank.[27] Notwithstanding this error, the Property Information Report listed two separate addresses for U.S. Bank: (1) U.S. Bank's principal and mailing address "per Sunbiz," and (2) the address for its registered agent for service of process "per Sunbiz."[28]

And because the Debtor had acquired title to Parcel 10 through a total of fourteen deeds, the Property Information Report separately listed the Debtor's

---

[24] § 197.502(5)(a), Fla. Stat.

[25] *Property Information Report*, Adv. Doc. No. 60-7.

[26] *Property Information Report*, Adv. Doc. No. 60-7.

[27] *Property Information Report*, Adv. Doc. No. 60-7.

[28] *Property Information Report*, Adv. Doc. No. 60-7. U.S. Bank's principal address and mailing address were the same. (www.sunbiz.org is "an official State of Florida website.")

address as stated on each of the deeds: the Property Information Report listed an address on 86th Street in Indianapolis, Indiana once and a Fishers, Indiana address thirteen times.[29]

On May 18, 2021, about a month after the Tax Collector received the Tax Deed Application, U.S. Bank's counsel e-mailed the Tax Collector's office asking whether a tax deed had been issued for Parcel 10.[30] That same day, the Tax Collector's office sent U.S. Bank's counsel a reply email stating that a tax deed had been applied for but that, as of that date, no tax deed sale had been set.[31]

The next day—May 19, 2021—U.S. Bank's attorney forwarded a copy of the Tax Collector's email to CPIF's attorney and to Diana Jacobs at U.S. Bank.[32] Ms. Jacobs served as the relationship manager for the Debtor's loan account.

Shortly thereafter, the Tax Collector forwarded the Property Information Report and the Tax Deed Application to the Hillsborough County Clerk of Court. On May 25, 2021, the Clerk of Court recorded a Notice of Tax Deed Application in the public records of Hillsborough County.[33] The Notice of Tax Deed Application

---

[29] *Property Information Report*, Adv. Doc. No. 60-7.

[30] *E-mail from Adriana Mainetti to the Tax Collector (May 18, 2021, 9:35 a.m. EST)*, Adv. Doc. No. 55-7.

[31] *E-mail from the Tax Collector to Adriana Mainetti (May 18, 2021, 11:24 a.m. EST)*, Adv. Doc. No. 55-7.

[32] *E-mail from Douglas Darbut to Alexandra MacLennan (May 20, 2021, 2:26 p.m. EST)*, Adv. Doc. No. 55-9; *E-mail from Douglas Darbut to Diana Jacobs (May 19, 2021, 3:35 p.m. EST)*, Adv. Doc. No. 55-8.

[33] *Notice of Application for Tax Deed*, Adv. Doc. No. 56-5.

stated that unless the tax certificate was redeemed, the Property would be sold at a public auction.[34]

On June 21, 2021, less than a month after the Clerk of Court recorded the Notice of Tax Deed Application, CPIF and U.S. Bank sued to foreclose the Mortgage on the Property.[35] In their foreclosure complaint, CPIF and U.S. Bank specifically alleged that the Debtor "failed to make property tax payments for the years 2018, 2019, and 2020 for the property known as The Bridges,"[36] and they attached a "printout of the Hillsborough County tax collector's website indicating [a] tax delinquency" as Exhibit G to the complaint.[37] Exhibit G includes the heading "Delinquent Individual Tax Certificate" for 2018 and 2019, with information including "Face [amount]," "Bidder #84355," "Rate: 0.25%" and "Cert. #8305."[38]

Meanwhile, the Clerk of Court conducted its own research to locate additional addresses for the Debtor, U.S. Bank, and the IRS.[39] The Clerk of Court found three additional addresses for the Debtor on its most recent annual report filed with the Florida Department of State: the addresses of its registered agent, a post office box,

---

[34] *Notice of Application for Tax Deed*, Adv. Doc. No. 56-5.

[35] *Verified Complaint*, Adv. Doc. No. 60-1 – 60-4.

[36] *Verified Complaint*, Adv. Doc. No. 60-1, ¶ 19.

[37] *Verified Complaint*, Adv. Doc. No. 60-1, ¶ 19; Adv. Doc. No. 60-4, Ex. G. at pp. 23 – 24.

[38] *Verified Complaint*, Adv. Doc. No. 60-4, Ex. G.

[39] *Dep. of Shelby Russ*, Adv. Doc. No. 55-10, p. 12, ll. 17 – 19; p. 13, ll. 21 – 25; p. 18, l. 23 – p. 19, l. 2; p. 54, l. 8 – p. 57, l. 4; p. 79, l. 24 – p. 80, l. 9; p. 88, l. 24 – p. 89, l. 8.

and its principal address on Crosspoint Boulevard, in Indianapolis, Indiana.[40] And on U.S. Bank's website, the Clerk found the address for U.S. Bank's Minneapolis, Minnesota headquarters.[41]

On August 19, 2021, as required by § 197.522, the Clerk of Court sent copies of a "Tax Deed Warning Notice"—with a tax deed sale date of September 23, 2021—by certified mail, return receipt requested, to the addresses listed in the Property Information Report and to the additional addresses the Clerk of Court had located for the Debtor and U.S. Bank.[42] In all, the Clerk of Court mailed the Tax Deed Warning Notices to the Debtor at five separate addresses and to U.S. Bank at three separate addresses.[43] In addition, a copy of the Tax Deed Warning Notice was physically posted at The Bridges.[44]

Four of the five Tax Deed Warning Notices mailed to the Debtor—the Tax Deed Notices mailed to the addresses on the deeds, the Debtor's registered agent and the Debtor's post office box—were returned by the post office as unclaimed. However an individual "signed for" the copy of the Tax Deed Warning Notice that

---

[40] *Dep. of Shelby Russ*, Adv. Doc. No. 55-10, p. 54, l. 8 – p. 63, l. 13; *E-mail from Shelby Russ to Teresa Clark and Travis Hubbard (June 25, 2021, 3:38 p.m. EST)*, Adv. Doc. No. 70-3; Adv. Doc. No. 70-1.

[41] *Dep. of Shelby Russ*, Adv. Doc. No. 55-10, p. 54, l. 8 – p. 63, l. 13; *E-mail from Shelby Russ to Teresa Clark and Travis Hubbard (June 25, 2021, 3:38 p.m. EST)*, Adv. Doc. No. 70-3; Adv. Doc. No. 70-1.

[42] *Tax Deed Warning Notice*, Adv. Doc. No. 55-12; Adv. Doc. No. 70-1.

[43] Adv. Doc. No. 70-1.

[44] *Dep. of Shelby Russ*, Adv. Doc. No. 55-10, p. 97, l. 1 – p. 98, l. 21; Adv. Doc. No. 55-16.

the Clerk of Court mailed to the Crosspoint Boulevard, Indianapolis address that the Debtor stated in its most recent Annual Report.[45]

Of the three Tax Deed Warning Notices mailed to U.S. Bank, one was returned by the post office as unclaimed.[46] However, two copies of the Tax Deed Warning Notice were successfully delivered to U.S. Bank: one at its corporate headquarters in Minneapolis, Minnesota, and one at the address listed for U.S. Bank's Registered Agent.[47]

Shortly after U.S. Bank's registered agent received the Tax Deed Warning Notice, a member of its "legal process group" logged onto the registered agent's website and reviewed the Tax Deed Warning Notice.[48] When the "legal process group" determined the Tax Deed Warning Notice related to The Bridges, the "legal process group" sent it to the Debtor's relationship manager at U.S. Bank—Ms. Jacobs.[49]

At this time, U.S. Bank was holding over $300,000 in escrow for the purpose of paying the Debtor's property taxes.[50]

---

[45] Adv. Doc. No. 70-1; Adv. Doc. No. 70-4.

[46] Adv. Doc. No. 70-1.

[47] Adv. Doc. No. 70-1; Adv. Doc. No. 70-4.

[48] *Dep. of Michael Doty*, Adv. Doc. No. 55-2, p. 19, ll. 7 – 21; p. 54, l. 12 – p. 55, l. 15.

[49] *Dep. of Michael Doty*, Adv. Doc. No. 55-2, p. 19, ll. 13 – 21; p. 54, l. 12 – p. 55, l. 15.

[50] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 69, ll. 2 – 20; p. 76, l. 10 – p. 81, l. 21; p. 84, l. 19 – p. 85, l. 12; p. 87, l. 15 – p. 88, l. 12; p. 104, ll. 4 – 11; p. 119, ll. 17 – 25; *Aff. of Bartle*, Adv. Doc. No. 59-1, ¶ 10.

In September 2021, U.S. Bank and CPIF had known for four months that a tax deed had been applied for,[51] and the Debtor and U.S. Bank had a month's actual notice of the September 23, 2021 tax deed sale date.[52] But despite the Debtor and U.S. Bank's having actual notice of the tax deed sale date, and U.S. Bank's holding over $300,000 in a tax escrow account for the purpose of paying property taxes,[53] neither the Debtor nor U.S. Bank—nor CPIF—took any action to redeem Parcel 10.

On September 23, 2021, the Clerk of Court conducted a public tax deed auction.[54] With its bid of $4.22 million, Pallardy was the successful bidder.[55] And on September 24, 2021, the Clerk of Court issued a tax deed to Pallardy (the "Tax Deed").[56]

Since the time Pallardy acquired the Tax Deed, Pallardy has not asked the Debtor to vacate the premises, and the Debtor has continued to manage The Bridges assisted living facility.[57] However, in October 2021, Pallardy filed a lawsuit in state

---

[51] *E-mail from Adriana Mainetti to the Tax Collector (May 18, 2021, 9:35 a.m. EST)*, Adv. Doc. No. 55-7; *E-mail from the Tax Collector to Adriana Mainetti (May 18, 2021, 11:24 a.m. EST)*, Adv. Doc. No. 55-7; *E-mail from Douglas Darbut to Diana Jacobs (May 19, 2021, 3:35 p.m. EST)*, Adv. Doc. No. 55-8; *E-mail from Douglas Darbut to Alexandra MacLennan (May 20, 2021, 2:26 p.m. EST)*, Adv. Doc. No. 55-9.

[52] Adv. Doc. No. 70-1; Adv. Doc. No. 70-4.

[53] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 69, ll. 2 – 20; p. 76, l. 10 – p. 81, l. 21; p. 84, l. 19 – p. 85, l. 12; p. 87, l. 15 – p. 88, l. 12; p. 104, ll. 4 – 11; p. 119, ll. 17 – 25; *Aff. of Bartle*, Adv. Doc. No. 59-1, ¶ 10.

[54] *Dep. of Shelby Russ*, Adv. Doc. No. 55-10, p. 33, ll. 4 – 11.

[55] *Dep. of Shelby Russ*, Adv. Doc. No. 55-10, p. 99, l. 23 – p. 100, l. 20; p. 102, l. 23 – p. 103, l. 9.

[56] *Tax Deed*, Adv. Doc. No. 56-7.

[57] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 97, ll. 11 – 19; p. 98, l. 12 – p. 99, l. 1; p. 110, ll. 9 – 15.

court against the Debtor, CPIF, U.S. Bank, and the Internal Revenue Service to quiet title to Parcel 10.[58] CPIF counterclaimed for a declaration that Pallardy's Tax Deed is invalid.[59]

A few months later, the Debtor filed its Chapter 11 case; within days, Pallardy removed its quiet title action to this Court.[60]

The parties have filed competing motions for summary judgment. The Debtor and CPIF ask the Court (1) to determine that notice of the tax deed sale failed to satisfy constitutional due process requirements; and (2) to use its broad equitable powers to invalidate Pallardy's tax deed based on the Debtor's use of Parcel 10 to operate a state-regulated assisted living facility.[61]

In support of its summary judgment motion, CPIF filed a letter from the Tax Collector.[62] According to the Tax Collector, the tax deed sale has led to "an inequitable result," and had the Tax Collector "been aware of the specific unique underlying facts and circumstances" regarding the property, it says no tax deed sale

---

[58] *Notice of Removal*, Ex. A, Adv. Doc. No. 1-1.

[59] *Notice of Removal*, Ex. A, Adv. Doc. No. 1-1.

[60] *Notice of Removal*, Adv. Doc. No. 1.

[61] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58; *Joinder to Def.'s Mot. for Summ. J.*, Adv. Doc. No. 59; *Resp. to Pl.'s Mot. for Summ. J.*, Adv. Doc. No. 72; *Joinder to Def.'s Resp. to Pl.'s Mot. for Summ. J.*, Adv. Doc. No. 73.

[62] *April 6, 2022 letter from Brian T. FitzGerald (Senior Assistant County Attorney) to Jonathan R. Weiss*, Adv. Doc. No. 60-10.

would have taken place.[63] Based on its discussions with the Clerk of Court's counsel, the Tax Collector says the Clerk of Court agrees with the Tax Collector's position regarding the tax deed sale.[64]

AHCA also wrote a letter supporting the Debtor's and CPIF's position, because, it says, if the ownership of the parcels on which The Bridges sits is divided, the Debtor's right to occupy Parcel 10 "will become more complex," and its license to operate an assisted living facility could be jeopardized.[65]

In its motion for summary judgment, Pallardy asks the Court to quiet title to Parcel 10 in Pallardy. Pallardy contends that, as a matter of law, its Tax Deed is valid because the Tax Collector and Clerk of Court strictly complied with Chapter 197, Florida Statutes, and that none of the three recognized grounds for challenging a tax deed are present.[66]

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs the parties' cross motions for summary judgment.[67] Under Rule 56(a), summary judgment is

---

[63] *April 6, 2022 letter from Brian T. FitzGerald (Senior Assistant County Attorney) to Jonathan R. Weiss*, Adv. Doc. No. 60-10.

[64] *April 6, 2022 letter from Brian T. FitzGerald (Senior Assistant County Attorney) to Jonathan R. Weiss*, Adv. Doc. No. 60-10.

[65] *August 29, 2021 letter from Thomas M. Hoeler to John E. Thomas*, Adv. Doc. No. 72-1.

[66] *Pl.'s Mot. for Summ. J.*, Adv. Doc. No. 55, pp. 9 – 14.

[67] Federal Rule of Bankruptcy Procedure 7056 provides that Federal Rule of Civil Procedure 56(a) applies in this proceeding.

appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[68] In reviewing a motion for summary judgment, courts must review the record and all its inferences in the light most favorable to the nonmoving party.[69]

When parties file cross motions for summary judgment, courts review each motion separately under the Rule 56(a) standard.[70] And the standard is the same: each moving party must show that there are no genuine disputes as to any material facts that would preclude judgment as a matter of law.[71] "The filing of cross motions does, however, 'authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.'"[72]

## III.   ANALYSIS

To determine the validity of Pallardy's Tax Deed, the Court must consider four issues:

> (A)   Did the Tax Collector and Clerk of Court comply with the notice provisions of Chapter 197 of the Florida Statutes?

---

[68] Fed. R. Civ. P. 56(a).

[69] *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1316 – 17 (11th Cir. 2010) (citing *Loren v. Sasser*, 309 F.3d 1296, 1301 – 02 (11th Cir. 2002)).

[70] *LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1325 (M.D. Fla. 2012).

[71] *Van Arsdale v. IRS (In re Van Arsdale)*, 2017 WL 2267021, at *2 (Bankr. N.D. Cal. May 18, 2017) (citing *Taft Broadcast. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

[72] *In re Van Arsdale*, 2017 WL 2267021, at *2 (quoting *Greer v. United States*, 207 F.3d 322, 326 (6th Cir. 2000)).

(B)    If the Tax Collector and the Clerk of Court complied with Chapter 197's notice provisions, did constitutional due process require the Tax Collector and Clerk of Court to do more?

(C)    If the Court finds that the notice provided to the Debtor and U.S. Bank satisfied statutory and constitutional due process requirements, does this Court have authority to create a new equitable ground for challenging tax deed sales based on the Debtor's use of the property—here, as an assisted living facility?

(D)    If the Court had the authority to invalidate a tax deed on equitable grounds, do the equities in this case warrant invalidating Pallardy's tax deed?

Having considered those issues, the Court concludes, for the reasons discussed below, that Pallardy's tax deed is valid as a matter of law.

### A.    The Tax Collector and Clerk of Court strictly complied with Chapter 197's notice provisions.

Read together, §§ 197.502 and 197.522 specify the parties to whom notice of the tax deed sale must be sent, and where and how the notice must be sent.[73]

Section 197.502(4) provides that the following persons are entitled to notice before property is sold at a tax deed sale:

- Any legal titleholder of record (if the owner appears on the record of conveyance of the property to the owner);

- Any lienholder of record (if an address appears on the recorded lien or if the lienholder is a financial institution that has designated an address with the Department of State under § 655.0201(2)); and

- Any mortgagee of record (if an address appears on the recorded mortgage or if the mortgagee has

---

[73] §§ 197.502, .522, Fla. Stat.

designated an address with the Department of State
under § 655.0201(2)).[74]

The tax collector is responsible for determining the identity of the titleholders,
lienholders, and mortgagees of record.[75] To make that determination, the tax
collector must contract with a title company or abstract company to obtain a
property information report.[76] The tax collector must then deliver to the clerk of
court a statement stating, *inter alia*, the persons entitled to receive notice of the tax
deed sale (i.e., titleholder, lienholders, and mortgagees of record).[77]

Section 197.502 then instructs the clerk of court—who is charged with
providing notice of tax deed sales—where notice must be sent.[78] For legal
titleholders, notice must be sent to the address on the "record of conveyance of the
property to the owner."[79] But if the legal titleholder is the same person to whom

---

[74] § 197.502(4)(a) – (c), Fla. Stat. Section 197.502 provides the following persons are also entitled to notice: any vendee of a recorded contract for deed (if an address appears on the recorded contract or if the vendee has applied to receive notice under section 197.344(1)(c); any other lienholder who has applied to the tax collector to receive notice; any person to whom the property was assessed on the tax roll for the year in which the property was last assessed; any lienholder of record who has recorded a lien against a mobile home located on the property (if an address appears on the recorded lien and if the lien is recorded with the clerk of the circuit court in the county where the mobile home is located); and any legal titleholder of record of property that is contiguous to the property described in the tax certificate if the property described in the tax certificate is submerged land or common elements of a subdivision. *Id.* at § 197.502(d) – (h).

[75] § 197.502(5)(a), Fla. Stat.

[76] § 197.502(5)(a), Fla. Stat.

[77] § 197.502(4), Fla. Stat.

[78] § 197.502(4), Fla. Stat.

[79] § 197.502(4)(a), Fla. Stat.

taxes were assessed for the year in which the property was last assessed, then the notice may be mailed to the address of the legal titleholder as it appears on the latest assessment roll.[80]

For both lienholders and mortgagees, the clerk of court is required to give notice at the address that appears on the recorded lien or mortgage, unless the lienholder or mortgagee has designated a registered agent under § 655.0201(2) to receive service of process or notice.[81] If a lienholder or mortgagee has designated a registered agent to receive notice, then notice *must* be served on the lienholder's or mortgagee's registered agent.[82]

Finally, § 197.522 instructs the clerk of court when and how the notice must be sent: at least 20 days prior to the date of the tax deed sale, the clerk of court must send notice to the persons identified in § 197.502 (i.e., legal titleholders, lienholders, mortgagees, etc.) by certified mail with return receipt requested.[83]

Here, CPIF and the Debtor do not dispute that the Tax Collector contracted for and obtained a Property Information Report;[84] the Tax Collector sent the

---

[80] § 197.502(4)(a), Fla. Stat.

[81] § 197.502(4)(b), (c). Fla. Stat. Section 655.0201(2), Florida Statutes, allows financial institutions that are authorized by federal or state law to transact business in Florida to designate with the Department of State a registered agent within Florida as the financial institution's sole agent for service of process or notice.

[82] § 197.502(4)(b), (c). Fla. Stat.

[83] § 197.522(1)(a), Fla. Stat.

[84] *Dep. of David Harrington*, Adv. Doc. No. 55-4, p. 62, l. 8 – p, 63, l. 15; *Dep. of Dana Dove*, Adv. Doc. No. 55-5, p. 21, ll. 6 – 13; p. 23, ll. 8 – 20; *Property Information Report*, Adv. Doc. No. 60-7.

Property Information Report to the Clerk of Court; using the Property Information Report, the Clerk of Court sent the Tax Deed Warning Notice to the Debtor at the addresses listed on the deeds to the Property;[85] and because U.S. Bank designated an address with the Florida Department of State, the Clerk of Court sent the Tax Deed Warning Notice to U.S. Bank by sending it to U.S. Bank's registered agent.[86]

### 1.   The Clerk of Court properly mailed the Tax Deed Warning Notice to the Debtor.

In its summary judgment motion, the Debtor argues that the Clerk of Court failed to satisfy § 197.522's requirements because the Clerk of Court mailed the Tax Deed Warning Notice to the Debtor's "prior address or an old address"—the Fishers, Indiana address.[87]

But the Debtor's argument has no merit: the Fishers, Indiana address is one of the addresses listed on the records of conveyance of the property to the Debtor, [88] precisely the address to which § 197.522 mandates notice to a title holder be sent.[89]

And the Debtor overlooks that the Tax Deed Warning Notice was also sent by certified mail to—and signed for at—the Debtor's Crosspoint Boulevard, Indianapolis address, and a signed receipt creates a strong presumption that the

---

[85] Adv. Doc. No. 70-1; *Property Information Report*, Adv. Doc. No. 60-7.

[86] Adv. Doc. No. 70-1; *Property Information Report*, Adv. Doc. No. 60-7.

[87] *Joinder to Def.'s Mot. for Summ. J.*, Adv. Doc. No. 59, ¶¶ 4 & 5.

[88] *Property Information Report*, Adv. Doc. No. 60-7.

[89] § 197.502(4)(a), Fla. Stat.

notice was received.[90] Further, in addition to the mailed notices, the Tax Collector

posted a copy of the Tax Deed Warning Notice at The Bridges' facility.

The Court finds that the Clerk of Court properly mailed the Tax Deed

Warning Notice to the Debtor.

## 2. The Clerk of Court properly mailed the Tax Deed Warning Notice to U.S. Bank.

CPIF argues that the Tax Collector and Clerk of Court failed to satisfy their

obligations under §§ 197.502 and 197.522 because (a) the Property Information

Report incorrectly described the recording information for the Mortgagee; and (b) the

Property Information Report stated that there was no address for U.S. Bank in the

(misidentified) mortgage. CPIF contends that, as a result of these two errors, the

Clerk of Court failed to send the Tax Deed Warning Notice to U.S. Bank's address

for notice as stated in the Mortgage.[91]

But the Property Information Report's erroneous statement that there was "no

address provided" for U.S. Bank is not relevant for two reasons. First, § 197.502

mandated that the Tax Deed Warning Notice be sent to U.S. Bank's registered

agent—not to the address in the Mortgage.[92] Second, § 197.522 specifically provides

---

[90] *Taylor v. CDS Advantage Sols.*, 2021 WL 1712278, at *4 (D.N.J. Apr. 30, 2021) (citing *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 319 (3d Cir. 2014)).

[91] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, pp. 6 – 8, 10 & 16 – 17.

[92] § 197.502(4)(c), Fla. Stat. Before 2018, the clerk of court was required to send notice to mortgagees at the address listed in the recorded mortgage. § 197.502(4)(c), Fla. Stat. (2017) (providing for notice to "[a]ny mortgagee of record if an address appears on the recorded mortgage"). In its response to Pallardy's summary judgment motion, CPIF suggests section 197.502 was "amended so as to *allow* a

that the clerk of court "may rely on the addresses provided by the tax collector based on the certified tax roll *and property information reports*."[93]

Indeed, § 197.522 unequivocally states that the "clerk of the circuit court has no duty to seek further information as to the validity of such addresses."[94] And § 197.502(d) specifically provides that "[t]he failure of anyone to receive notice as provided herein shall not affect the validity of the tax deed issued pursuant to the notice."[95]

Therefore, even if the Property Information Report was "rife with mistakes" and resulted in the Clerk of Court's not sending the Tax Deed Warning Notice to U.S. Bank at the address in the Mortgage, the Clerk of Court satisfied the requirements of Chapter 197 when it mailed the Tax Deed Warning Notice to U.S. Bank's registered agent.

### B.     The notice given by the Clerk of Court satisfied constitutional due process requirements.

Notwithstanding the Tax Collector's and the Clerk of Court's compliance with Chapter 197, CPIF and the Debtor contend that "[s]imply abiding by the statutory

---

financial institution to be served through their registered agent." *Resp. to Pl.'s Mot. for Summ. J.*, Adv. Doc. No. 72, p. 6. The implication, of course, is that the Clerk of Court here could have still served U.S. Bank at the address in the mortgage. Not so. The amendment to section 197.502 regarding service on a mortgagee is mandatory: "[I]f the mortgagee has designated an address with the Department of State pursuant to s. 655.0201(2), *then notice must be sent to the address on file with the Department of State*." § 197.502(4)(c), Fla. Stat. (2018) (emphasis added).

[93] § 197.522(3), Fla. Stat. (emphasis added).

[94] § 197.522(3), Fla. Stat.

[95] § 197.522(1)(d), Fla. Stat.

scheme is not constitutionally sufficient where unique circumstances of the case require more."[96] In support of its position, CPIF relies primarily on the U.S. Supreme Court's ruling in *Jones v. Flowers* and the Florida Supreme Court's decision in *Vosilla v. Rosado*.

In *Jones v. Flowers,* the U.S. Supreme Court granted certiorari to determine whether due process requires the government to take additional reasonable steps to notify a property owner of a tax sale when notice of the tax sale, sent by certified mail, is returned by the post office as unclaimed.[97] At the outset, the Supreme Court reiterated its holding in *Dusenbery v. United States*: "Due process does not require that a property owner receive actual notice before the government may take his property."[98]

The Supreme Court noted that although in prior cases it had held that notice was "constitutionally sufficient if it was reasonably calculated to reach the intended recipient *when sent*," its rulings were in cases where "the government attempted to provide notice and *heard nothing back indicating that anything had gone awry*."[99]

---

[96] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, p. 12 (citing *Jones v. Flowers*, 547 U.S. 220 (2006)); *Joinder to Def.'s Mot. for Summ. J.*, Adv. Doc. No. 59, ¶¶ 2 – 8.

[97] 547 U.S. at 225.

[98] *Id.* at 226.

[99] *Id.* (citing *Dusenbery v. United States*, 534 U.S. 161, 168 – 69 (2002); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)) (emphasis added).

The *Flowers* case presented a different question: whether due process is satisfied if the government takes *no action* after finding out its notice attempt failed.[100] To answer that question, the Supreme Court hearkened back to its ruling in *Mullane v. Central Hanover Bank & Trust Co.* that when a person is entitled to notice, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."[101] Applying that standard in the *Flowers* case, the Supreme Court doubted that "a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed."[102] To the contrary, the Supreme Court observed that someone who wanted to notify the property owner would have taken "further reasonable steps if any were available."[103]

The Supreme Court concluded that due process requires the taxing authority to take "additional reasonable steps to notify [the owner], if practicable to do so."[104] And, the Court directed, when taking those additional reasonable steps, the taxing authority is required to "consider unique information about [the] intended recipient

---

[100] *Id.* at 227.

[101] *Id.* at 229 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)).

[102] *Id.*

[103] *Id.* at 230.

[104] *Id.* at 234.

regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case."[105]

The Supreme Court then described the types of reasonable steps the taxing authority could have taken. For instance, the taxing authority could have sent the notice to the property owner at the property's address by regular mail, in which case the notice would have been delivered even if no one was home to sign for it, and if the owner had moved, the new occupant might have delivered it to the owner directly or scrawled the owner's new address on the envelope and left it for the mail carrier.[106] Or, the Supreme Court suggests, the taxing authority could have posted the notice on the property's front door.

Ultimately, though, the Supreme Court noted it was not the Court's responsibility to prescribe the additional steps the taxing authority was required to take. The Court stated:

> The State can determine how to proceed in response to our conclusion that notice was inadequate here, and the States have taken a variety of approaches to the present question. It suffices for present purposes that we are confident that additional reasonable steps were available for Arkansas to employ before taking Jones' property.[107]

Nine months after the *Flowers* ruling, the Florida Supreme Court decided *Vosilla v. Rosado*. In *Rosado*, the property owners moved from their home (the

---

[105] *Id.* at 230.

[106] *Id.* at 234 – 35.

[107] *Id.* at 238.

"Altamonte Property") four months after the issuance of a tax certificate. The owners notified the tax collector that they were the owners of the Altamonte Property, that they had moved to a new residence, and that the Altamonte Property was occupied by a legally incapacitated relative and a non-English speaking caregiver; they requested that the tax collector send all correspondence to a post office box.[108] The owners also sent a letter by certified mail to the clerk of court advising of their new residence address and the post office address.[109] The clerk of court acknowledged receipt of the letter.[110]

The tax collector did not update the owner's address on the tax roll, so when the tax certificate holder applied for a tax deed, the clerk of court mailed a notice of the tax deed application to the Altamonte Property.[111] Although someone signed for the tax deed application, the owners never received notice of the tax deed application nor of the tax deed sale.[112]

After the clerk of court sold the home at a tax deed sale and issued a tax deed, the successful bidder conveyed the home to a third party. The third party filed suit against the owners to quiet title to the property.[113] The owners argued that the clerk

---

[108] 944 So. 2d 289, 291 (Fla. 2006).

[109] *Id.* at 291.

[110] *Id.*

[111] *Id.* at 292.

[112] *Id.*

[113] *Id.*

24

of court's notice was not reasonably calculated under all the circumstances to apprise them of the tax deed sale because, despite the owners' having notified both the tax collector and clerk of court of their new address, the clerk of court sent the notice of the tax deed sale to the Altamonte Property.[114]

The trial court concluded that the owners' failure to receive notice was the tax collector's fault, but nonetheless ruled that the notice satisfied due process because it complied with Chapter 197's notice provisions.[115] The Fifth District Court of Appeal reversed.[116] On appeal, the Florida Supreme Court considered whether a notice—that otherwise complies with § 197.522(1)—violates a titleholder's due process rights when the taxing authority has actual notice of a change of address from the titleholder but sends notice of the tax deed sale to the old address.[117]

Relying on the U.S. Supreme Court's rulings in *Mullane* and *Flowers*, the Florida Supreme Court held that a taxing authority must consider "unique information about an intended recipient that might require the taxing authority to make efforts beyond those required by the statutory scheme under ordinary circumstances."[118]

---

[114] *Id.*

[115] *Id.*

[116] *Id.* at 292 – 93.

[117] *Id.* at 293.

[118] *Id.* at 299 – 300.

Here, CPIF contends that under *Flowers* and *Rosado*, three pieces of "unique" information required the Clerk of Court to go beyond the notice requirements of Chapter 197 and, for that reason, this Court should invalidate the Tax Deed.[119]

First, CPIF contends the Property Information Report "was rife with mistakes."[120]

Second, CPIF points out that the majority of the Tax Deed Warning Notices mailed by the Clerk of Court went undelivered.

And third—although this issue has nothing to do with constitutional due process—CPIF contends that The Bridges has unique physical characteristics as (a) a single building with an attached parking lot straddling three parcels, only one of

---

[119] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, pp. 14 – 23. CPIF also raises a fourth "irregularity" that does not require much discussion: CPIF contends the Tax Deed Warning Notice contained an incorrect legal description for the Property. *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58 at 19 – 21. In fact, the Tax Deed Warning Notice contained the correct legal description for the Property. *Cf. Tax Deed Warning Notice*, Adv. Doc. 55-12, *with Tax Deed*, Adv. Doc. No. 56-7. It simply omitted the legal description for Parcels 30 and 70. CPIF never explains why the Tax Deed Warning Notice for the Property should include legal descriptions for parcels not being sold at the same tax deed sale or how the failure to include those legal description renders the legal description for the Property (Parcel 10) erroneous.

[120] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, p. 16. Although CPIF contends the Property Information Report "was rife with mistakes," CPIF only points to two: the Property Information Report included the incorrect O.R. Book and Page numbers for U.S. Bank's Mortgage; and because the Property Information Report includes the incorrect citation to U.S. Bank's Mortgage, it also incorrectly states there was "no address" in the Mortgage for U.S. Bank. *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, p. 16. CPIF also complains that the Property Information Report omitted a reference to a lis pendens CPIF recorded. *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58 at 15 – 16. But CPIF recorded the lis pendens after the Property Information Report was prepared. Obviously, the Property Information Report could not refer to a lis pendens that had not yet been recorded.

which was acquired by Pallardy and (b) a regulated healthcare facility financed through industrial development revenue bonds.[121]

CPIF concedes that, standing alone, any one of these unique circumstances may not warrant vacating the Tax Deed, but argues that their cumulative effect has "resulted in a grave constitutional harm that cannot be permitted to stand."[122]

Having carefully considered CPIF's contentions, the Court finds:

(1)     the Clerk of Court took additional reasonable steps to ensure notice as demonstrated by the actual notice received by the Debtor and U.S. Bank;

(2)     CPIF and the Debtor received actual notice;

(3)     the Court does not have equitable power to invalidate the tax deed because the Property is used as an assisted living facility; and

(4)     even if the Court had such equitable power, the equities do not warrant invalidating the tax deed.

### 1.     The Clerk of Court took additional reasonable steps to ensure notice.

*Flowers* stands for the proposition that when a governmental entity learns a tax deed notice has been returned unclaimed, the government must take "additional reasonable steps" to provide notice to the property owner, if it is practical to do so.

---

[121] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, pp. 17 – 19 & 21 – 23.

[122] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, p. 26.

Here, the Tax Collector did take additional reasonable steps to provide notice to the Debtor and U.S. Bank—in fact, it took those steps *before* any notices were returned.[123]

The Property Information Report included two addresses for the Debtor and two addresses for U.S. Bank.[124] Under § 197.522, the Clerk of Court was required to give notice to the Debtor and U.S. Bank at those addresses only.[125] But the Clerk of Court exceeded § 197.522's requirements: it conducted its own research and located three additional addresses for the Debtor and an additional address for U.S. Bank.[126]

So, in addition to sending the Tax Deed Warning Notice to the addresses in the Property Information Report, the Clerk of Court also mailed them to the three additional addresses for the Debtor and the additional address for U.S. Bank. And the Clerk of Court posted the Tax Deed Warning Notice at The Bridges—exactly the type of additional reasonable step that the U.S. Supreme Court proposed in *Flowers.*

---

[123] In its summary judgment motion, the Debtor complains the Clerk of Court did nothing after learning that all the notices sent to the Debtor at the addresses listed in the Property Information Report went unclaimed. *Joinder to Def.'s Mot. for Summ. J.*, Adv. Doc. No. 59, ¶¶ 2 – 8. While that may be technically true, it overlooks the fact that the Clerk of Court was proactive and searched for alternative addresses *before* learning the notices sent to the addresses in the Property Information Report were returned. Assuming that locating alternative addresses for the Debtor and U.S. Bank and sending notice there are the types of "additional reasonable steps" contemplated by *Flowers*, the Clerk of Court should not be faulted for taking those steps ahead of time.

[124] *Property Information Report*, Adv. Doc. No. 60-7.

[125] § 197.502(4), .522(1), Fla. Stat.

[126] An address for the Debtor's registered agent, the Debtor's mailing address as listed on the most recent annual report filed with the Florida Department of State, an address for the Debtor's principal place of business as listed on the most recent annual report filed with the Florida Department of State, and the address for U.S. Bank's headquarters in Minneapolis, Minnesota. *Dep. of Shelby Russ*, Adv. Doc. No. 55-10, p. 12, ll. 4 –p. 13, l. 25; p. 18, l. 23 – p. 19, l. 2; p. 79, l. 20 – p. 80, l. 9; p. 88, l. 25 – p. 89, l. 8; Adv. Doc. 70-1.

The Clerk of Court's additional steps—taken before any of the Tax Deed Warning Notices were returned by the post office as undeliverable—are exactly the types of steps that a person who wanted the Debtor and U.S. Bank to receive notice would have taken. Moreover they resulted in the Debtor's and U.S. Bank's *actually receiving notice* of the scheduled tax deed sale.

The Court concludes that the Clerk of Court took additional reasonable steps to ensure notice to the Debtor and to U.S. Bank.

### 2.    The Debtor had actual notice of the tax deed sale.

Although the notices sent to the Debtor at the addresses on the deeds to Parcel 10 were returned as "undeliverable,"[127] a copy was posted at The Bridges,[128] and the Debtor acknowledges that, a month before the tax deed sale, the Tax Deed Warning Notice was signed for at the Debtor's Crosspoint Boulevard, Indianapolis address as listed on the Debtor's most recent annual report.[129]

A signed receipt creates a strong presumption that the notice was received.[130] Moreover, in other contexts, federal courts have held that proof of mailing a notice

---

[127] Adv. Doc. No. 70-1.

[128] *Dep. of Shelby Russ*, Adv. Doc. No. 55-10, p. 97, l. 1 – p. 98, l. 21; Adv. Doc. No. 55-16.

[129] Adv. Doc. No. 70-1; Adv. Doc. No. 70-4.

[130] *Taylor v. CDS Advantage Sols.*, 2021 WL 1712278, at *4 (D.N.J. Apr. 30, 2021) (citing *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 319 (3d Cir. 2014)).

by certified mail, along with a signed receipt, is proof that the government has satisfied its due process obligations.[131]

The Court concludes that the Debtor received actual notice of the tax deed sale.

### 3.    U.S. Bank had actual notice of the tax deed sale.

In May 2021, four months before the tax deed sale, U.S. Bank's attorney emailed Ms. Jacobs at U.S. Bank (the Debtor's relationship manager) and CPIF's attorney that a Tax Deed Application had been applied for, though no sale date had been set yet.

In August 2021, one month before the tax deed sale, U.S. Bank received the Tax Deed Warning Notice directly from the Clerk of Court at its corporate headquarters and from its registered agent.[132] And when U.S. Bank received the Tax Deed Notice from its registered agent, it emailed a copy to Ms. Jacobs, U.S. Bank's relationship manager for the Debtor.[133]

---

[131] *See, e.g., Chairez v. United States*, 355 F.3d 1099, 1101 – 02 (7th Cir. 2004) ("Because *Dusenbery* does not require actual notice via acknowledged receipt by the prisoner, the certified delivery and acceptance of the notice of forfeiture by authorized jail personnel reasonably apprised Chairez of the pendency of the forfeiture action. The government published notice in a newspaper of general circulation, sent certified mail to the incarcerated party's last known address, sent notice by certified mail to the prison where he was incarcerated, and produced the signed receipt showing that the notice arrived at the jail. Service by certified mail has long been considered an acceptable means to provide notice."); *U.S. v. Hall*, 2010 WL 11531405, at *2 (D. Nev. March 31, 2010) (holding that "government's due process obligations are satisfied by mailing notice of an administrative forfeiture proceeding via certified mail addressed to a potential claimant, care of the prison where he is being held, and receiving a return from an official at the prison acknowledging receipt of the notice").

[132] *Dep. of Michael Doty*, Adv. Doc. No. 55-2, p. 78, ll. 2 – 5; p. 78, l. 11 – p. 79, l. 11.

[133] *Dep. of Michael Doty*, Adv. Doc. No. 55-2, p. 19, ll. 7 – 21; p. 54, l. 12 – p. 55, l. 15.

There is no question here: U.S. Bank had actual notice of the tax deed sale. And, although CPIF argues that U.S. Bank should have received notice at the address it listed in the Mortgage,[134] this argument fails; the Clerk of Court mailed the Tax Deed Warning Notice to U.S. Bank's registered agent exactly as § 197.522 required. Although CPIF has cited to cases in which the court held that notice to an owner, lienholder, or mortgagee was insufficient,[135] not a single case involved a situation in which the owner, lienholder, or mortgagee, had received *actual notice* of the tax deed sale.[136]

Finally, CPIF contends that the alleged deficiencies regarding the delivery of the Tax Deed Warning Notice to U.S. Bank[137] are not "cleansed" simply because U.S. Bank did, in fact, receive the Tax Deed Warning Notice. But this makes no sense.[138] The Court notes that the only case CPIF cites in support of its argument— *Evans v. Ireland*[139]—fails to support CPIF's position. In *Evans*, the court ruled that

---

[134] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, pp. 6 – 8, 10 & 16 – 17.

[135] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, pp. 12 – 14 (citing *Jones v. Flowers*, 547 U.S. 220 (2006); *Vosilla v. Rosado*, 944 So. 2d 289 (Fla. 2006); *Delta Prop. Mgmt. v. Profile Invs., Inc.*, 87 So. 3d 765 (Fla. 2012); *Thompson v. Markham*, 164 So. 3d 1289 (Fla. 1st DCA 2015); *Patricia Weingarten Assocs. v. Jocalbro, Inc.*, 974 So. 2d 559 (Fla. 5th DCA 2008)).

[136] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, pp. 12 – 14 (citing *Jones v. Flowers*, 547 U.S. 220 (2006); *Vosilla v. Rosado*, 944 So. 2d 289 (Fla. 2006); *Delta Prop. Mgmt. v. Profile Invs., Inc.*, 87 So. 3d 765 (Fla. 2012); *Thompson v. Markham*, 164 So. 3d 1289 (Fla. 1st DCA 2015); *Patricia Weingarten Assocs. v. Jocalbro, Inc.*, 974 So. 2d 559 (Fla. 5th DCA 2008)).

[137] Primarily relating to the Property Information Report's erroneous statement that the mortgage did not include U.S. Bank's address.

[138] *Resp. to Pl.'s Mot. for Summ. J.*, Adv. Doc. No. 72, p. 6.

[139] *Evans v. Ireland*, 707 So. 2d 1135 (Fla. 2d DCA 1998).

property owners had received sufficient notice of the tax deed sale and that the clerk
of court's failure to send notice to neighboring landowners—who had been
incorrectly listed on the tax roll as the owners—was not grounds to invalidate the tax
deed sale.

> **C.    This Court does not have the equitable power to invalidate the
> Tax Deed.**

CPIF contends, and the Tax Collector and AHCA apparently agree, that
Parcel 10's usage as a portion of The Bridges assisted living facility is a "unique"
circumstance that warrants the Court's exercising its equitable power to invalidate
the Tax Deed.[140]

But, under Florida law, there are only three grounds for challenging a tax
deed—one statutory and two judicially created. First, under § 65.081, the property
owner may challenge a tax deed if the delinquent taxes were paid before the tax deed
sale.[141] Second, courts have permitted a tax deed to be challenged if any common
areas of a condominium are subject to the tax deed.[142] And third, courts have

---

[140] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, p. 24; *Ranch House of Orange-Brevard, Inc. v. Gluckstern
(In re Ranch House of Orange-Brevard, Inc.)*, 773 F.2d 1166, 1169 (11th Cir. 1985) (recognizing that
"bankruptcy courts are inherently courts of equity with broad remedial powers").

[141] § 65.081, Fla. Stat. ("No defense to the action or attack upon the tax deed shall be made except
the defense that the taxes assessed against the property had been paid by the former owner before
issuance of the tax deed.").

[142] *Kahama VII, LLC v. KTLC Riverboat, LLC*, 2016 WL 1375590, at *3 (S.D. Fla. Apr. 7, 2016).
(explaining that a "judicially-created" exception "permits a challenge against a tax deed if any
common areas of a condominium are subject to the tax deed").

permitted tax deeds to be challenged if the tax collector or clerk of court failed to follow Chapter 197's notice provisions.[143]

Only one of the three grounds—insufficient notice under Chapter 197—applies here, and, for the reasons discussed above, this Court has concluded that the Tax Collector and Clerk of Court complied with Chapter 197's notice provisions and that the notice satisfied constitutional due process requirements.

In essence, what CPIF asks is for this Court to create a *new* equitable ground for challenging a tax deed: the usage of Parcel 10 as an assisted living facility. But although the bankruptcy court is a court of equity with broad remedial powers,[144] its powers are not "unlimited."[145] And CPIF has not cited any legal authority for the proposition that a bankruptcy court—or any court for that matter—may use its equitable powers to invalidate a tax deed.[146]

For example, in *Kahama VII, LLC v. KTLC Riverboat, LLC*, before the plaintiff completed its foreclosure sale, the property being foreclosed upon was sold at a tax

---

[143] *Id.*

[144] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, p. 24; *Ranch House of Orange-Brevard, Inc. v. Gluckstern (In re Ranch House of Orange-Brevard, Inc.)*, 773 F.2d 1166, 1169 (11th Cir. 1985) (recognizing that "bankruptcy courts are inherently courts of equity with broad remedial powers").

[145] *Shapiro v. Saybrook Mfg. Co. (Matter of Saybrook Mfg. Co.)*, 963 F.2d 1490, 1495 (11th Cir. 1992) ("Bankruptcy courts are indeed courts of equity . . . . This equitable power, however, is not unlimited.").

[146] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, pp. 24–27.

33

deed sale,[147] and the plaintiff filed a lawsuit to quiet title to the property.[148] At the outset, the *Kahama* court recognized the three established grounds for invalidating a tax deed under Florida law, and after noting that none of the grounds applied, the court turned to the plaintiff's argument that the tax deed may be invalidated "upon a variety of grounds."[149]

First, the court easily distinguished the single bankruptcy case cited by the plaintiff—*In re Wynwood Community Economic Development Corp.*[150]—because (1) no tax deed had been issued; (2) the case involved the invalidation of *tax certificate*s, not a tax deed; and (3) the bankruptcy court did not address the impact that invalidating a tax certificate would have on a recorded tax deed.[151] (In any event, the bankruptcy court later vacated its ruling in *Wynwood*.[152])

Next, the *Kahama* court pointed out that each of the Florida state court decisions cited by the plaintiff pre-dated 1941.[153] As the court explained, prior to 1941, "every presumption was *against* the validity of a tax sale, and one claiming title

---

[147] *Kahama*, 2016 WL 1375590, at **1 – 2.

[148] *Id.* at ** 2 – 3.

[149] *Id.* at *4.

[150] *Id.* (distinguishing *In re Wynwood Comty. Econ. Dev. Corp.*, 2009 WL 1107636 (Bankr. S.D. Fla. Apr. 23, 2009)).

[151] *Id.*

[152] *Id.*

[153] *Id.*

under such a sale had to prove strict compliance with all applicable statutory provisions."[154] But starting in 1941, because the difficulty of establishing tax deed titles hampered states' ability to collect property taxes, state legislatures began to enact statutes relaxing the common-law requirements for tax deed sales.[155] In 1943, the Florida Legislature enacted § 65.081(3) to provide that no defense to, or attack on, a tax deed shall be made except the defense "that the taxes assessed against the property had been paid by the former owner before issuance of the tax deed."[156]

For that reason, the *Kahama* court declined to follow the pre-1941 line of cases that had recognized additional challenges to tax deeds. And, more importantly, the court declined to create a new ground for invalidating a tax deed.[157]

The Court here agrees with the *Kahama* court's analysis. Nearly eighty years ago, the Florida Legislature passed a statute limiting defenses to, or attacks on, tax deeds.[158] Since then, Florida courts have only recognized two non-statutory grounds for voiding a tax deed sale. Because the trend over the last eighty years has been to relax the requirements for establishing tax deeds—not to tighten them—the Court

---

[154] *Id.*

[155] *Id.*

[156] *Id.* at *3 (quoting § 65.081(3), Fla. Stat.).

[157] *Id.* at *7.

[158] *Id.* at *3.

declines to use its equitable powers to create another exception for challenging tax deeds based on the owner's use of the property.

To be fair, CPIF appears to limit its request for an equitable exception to the "unique" facts of this case. But CPIF articulates no limiting principle that would allow the Court to invalidate the Tax Deed here but not in another case where upholding a tax deed might lead to a perceived inequitable result or might impact upon persons other than the property owner.

Finally, from a public policy perspective, the creation of an equitable basis for invalidating a tax deed sale based upon the use of the property could result in courts being called on to determine whether the equities in a particular case warranted invalidating a tax deed. This would undermine the certainty of tax deed sales and hamstring the state from collecting delinquent property taxes.

The Court concludes that it lacks authority to invalidate a tax deed based on the use of the underlying property.

**D.    Even if the Court had authority to invalidate the Tax Deed based on the use of Parcel 10, the equities here do not warrant invalidating the Tax Deed.**

Even if the Court had the authority to invalidate the Tax Deed on equitable grounds, the Court would decline to do so for two reasons.

First, CPIF describes the parties' competing interests as being, on the one hand, the concerns of the Debtor, CPIF, and the Tax Collector about the Debtor's ability to operate as a licensed assisted living facility and the possible impact on The

Bridges' residents versus, on the other hand, Pallardy's desire "to leverage its opportunistic acquisition by maximizing its sales price far beyond market value."[159]

But there is no record evidence that establishes that there would be any impact on The Bridges' residents. Rather, the record reflects that Pallardy has owned Parcel 10 for nearly a year,[160] during which time the Debtor has continued to manage the entire assisted living facility.[161] And Pallardy's representative stated on the record that it does not intend to take any action that would jeopardize the Debtor's operation of The Bridges as an assisted living facility.

Second, as far back as 1843, the U.S. Supreme Court recognized that courts of equity will not interfere when the party seeking equitable relief "has slept upon his rights for a great length of time."[162] Indeed, a traditional maxim of equity teaches that "[e]quity aids the vigilant not those who sleep on their rights."[163]

Here, CPIF, U.S. Bank, and the Debtor slept on their rights. U.S. Bank had escrowed money to pay the property taxes in 2018.[164] In May 2021, four months before the tax deed sale, CPIF and U.S. Bank had actual knowledge that the 2018

---

[159] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, p. 25.

[160] *Tax Deed*, Adv. Doc. No. 56-7.

[161] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 97, ll. 11 – 19; p. 98, l. 12 – p. 99, l. 1.

[162] *Bowman v. Wathen*, 42 U.S. 189, 193 (1843).

[163] 1 Dan B. Dobbs, *Law of Remedies* § 1.2(4) n.7 (2d ed. 1993).

[164] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 66, l. 8 – p. 69, l. 20.

property taxes were unpaid and that a tax deed had been applied for.[165] And, in August 2021, one month before the tax deed sale, U.S. Bank received the Tax Deed Warning Notice and forwarded it internally to Ms. Jacobs, the Debtor's relationship manager at U.S. Bank. At that point, U.S. Bank was holding more than $300,000 in escrow that could have been used to pay the property taxes.[166] Yet, neither U.S. Bank nor CPIF took any action to redeem Parcel 10 before the tax deed sale.

CPIF characterizes the equitable issue as whether the Court should allow Pallardy to "leverage its opportunistic acquisition by maximizing its sale price far beyond fair market value."[167] The Court would characterize the issue a different way: should the Court invalidate a tax deed when the owner and the mortgage holder had actual notice that property taxes had not been paid, a tax deed had been applied for, and a tax deed sale had been set, but the owner and the mortgage holder took no action to redeem the property. The answer to that question is "no."

## III.    CONCLUSION

The Court concludes that Pallardy met his burden on summary judgment to show that there is no genuine issue as to any material fact and that it is entitled to

---

[165] *E-mail from Adriana Mainetti to the Tax Collector (May 18, 2021, 9:35 a.m. EST)*, Adv. Doc. No. 55-7; *E-mail from the Tax Collector to Adriana Mainetti (May 18, 2021, 11:24 a.m. EST)*, Adv. Doc. No. 55-7; *E-mail from Douglas Darbut to Diana Jacobs (May 19, 2021, 3:35 p.m. EST)*, Adv. Doc. No. 55-8; *E-mail from Douglas Darbut to Alexandra MacLennan (May 20, 2021, 2:26 p.m. EST)*, Adv. Doc. No. 55-9.

[166] *Dep. of John Bartle*, Adv. Doc. No. 55-1, p. 69, ll. 2 – 20; p. 76, l. 10 – p. 81, l. 21; p. 84, l. 19 – p. 85, l. 12; p. 87, l. 15 – p. 88, l. 12; p. 104, ll. 4 – 11; p. 119, ll. 17 – 25; *Aff. of Bartle*, Adv. Doc. No. 59-1, ¶ 10.

[167] *Def.'s Mot. for Summ. J.*, Adv. Doc. No. 58, p. 25.

judgment as a matter of law, and that the Debtor and CPIF failed to meet their burdens.

The Tax Collector and Clerk of Court complied with Chapter 197's notice provisions; the Clerk of Court also took additional reasonable steps that ensured the Debtor and U.S. Bank received notice of the tax deed sale; this Court does not have equitable power to invalidate the Tax Deed; and, even if it had such equitable power, the equities do not warrant invalidating the Tax Deed.

Accordingly, Pallardy is entitled to judgment as a matter of law confirming the validity of the Tax Deed and quieting title to Parcel 10 in Pallardy.

---

The Clerk's Office is directed to serve this Memorandum Opinion on interested parties via CM/ECF.

---

**Lynn Welter Sherman, Esq.**
**Trenam Law**
  *Counsel for Pallardy LLC*

**Mark A. Salzberg, Esq.**
**Jonathan R. Weiss, Esq.**
**Squire Patton Boggs (US) LLP**
  *Counsel for CPIF Lending LLC*

**Alberto F. Gomez, Jr., Esq.**
**Angelina E. Lim, Esq.**
**Johnson, Pope, Bokor, Ruppel & Burns, LLP**
  *Counsel for BVM The Bridges, LLC*

**W. Keith Fendrick, Esq.**
**Holland & Knight LLP**
  *Counsel for U.S. Bank*